Oyez, oyez. All persons having business with the Honorable United States Court of Appeals for the Third Circuit are advised to draw near and give their attention, for this court is now in session. God save the United States and the Honorable Court. Please be seated. Good morning, everyone. First matter is RHA Medical Center v. City of Dubois. Is it Dubois or Dubois? It's Dubois, I can tell you. I have no contact with Central Pennsylvania. He knows that neck of the woods. I don't. Is he right? Is it Dubois? I think it's Dubois, yeah. We don't speak any French up there, so it's got to be Dubois. I don't speak any English, either. Well, I don't know about that. May it please the Court, Matt Monsoor on behalf of RHA Medical Center. What did you say your name was? Matt Monsoor. Where are you from? Originally. Well, recently. Monsoor is French. Okay, that was the point. Variation on my sister. That's exactly the point I was making. I wanted to prove him wrong before we got going. Go ahead, sir. With your permission, I'd like to reserve two minutes for rebuttal. Two minutes is really not enough. Do you want more? Well, because you'll stay two minutes and you'll get up and you'll have to sit down again. And we've already taken up a minute of your time. It does get substantive from here. I hope so. This case presents another instance of a city using discriminatory zoning against a methadone treatment center to keep it out. Let's back into the issues. I mean, that's a nice statement. We're not a jury. There are a couple of issues here. You're only arguing standing and the mitigation. Correct. Help me understand why this should be regarded as kind of standing case. I understand that everyone would agree that drug addiction is an impairment. But why is it the kind of an impairment that would qualify as a disability under the ADA and the RA? The regarded as prong is designed to cover individuals rejected because of the myths, fears, and stereotypes associated with the disability. Well, you're putting that in the hat because you just put the word disability in your answer. I'm asking you why does the impairment rise to the level of a disability under the RA and the ADA? Because the city of Dubois regarded perceived RHJ's patients as being substantially limited in the major life activity of caring for oneself. The city did? Yes. What is the evidence in the record of that? patients at the treatment center as having a condition that constitutes a disability under the statute, right? Correct. So that what the perceivers are regarding is not simply a bad thing. We don't want a treatment center in our neighborhood. They have to be regarding the people using the treatment center as having a condition that constitutes a disability under the statute as defined. That's exactly right. What's in the record to support that? At the public hearing on RHJ's application for a certificate of use, speakers assumed that RHJ's patients would go bad at their facility, that they would overdose on heroin at the facility, that they were suicidal, that they had severe problems that needed constant and daily medical attention. Those are certainly indications of some kind of symptomatology or various symptoms. But how does that suggest an impairment that meets the definition of a disability? The Second Circuit and regional economic and this court affirmed in US v. Autobahn that the inability to live independently without relapsing into drugs substantially limits the major life activity of care for oneself. But weren't those halfway house cases? They were halfway house cases, yes. But we don't have a halfway house here. We don't. But what we have in the evidence is the city's view that RHJ's patients could not live independently without relapsing into drugs. Did they say that? Is there any statement they could not live? Is there any statement from which we could draw an inference that that was the view of people regarding the people who went to the treatment center as having such impairments? I think there is, Your Honor. First, I don't think in- Did the district court make any findings in that respect? Or did it conversely ignore any evidence? Well, I think two things. One is that the district court ignored evidence because it failed to impute the comments about overdosing, the comments about relapsing into drugs from speakers at the public hearing to the city. On what basis would it make that imputation? The law is very clear on this. If a community or if, excuse me, if a city bases any part of its decision on community views, those community views are imputed to the city. That's what the Fourth Circuit said. The question is what makes you think that the city imputed, it didn't say based upon the testimony we've heard today we're going to enact, wouldn't it 1720 or 621? The city adopted every single one of the residents' concerns and their findings of fact and conclusions of law denying RHA's application for certificate of use. And you don't have to take my word for it. The district court expressly found that at A0027 of the record, the district court says, the city solicitor reviewed the public hearing statement and incorporated all the residents' statements into the findings of fact and conclusions of law. The district court found that all of those concerns expressed were illegitimate, completely illegitimate, every one of them. Were illegitimate? Yes. Illegitimate in what sense? Illegitimate in that. I mean, inaccurate or unsubstantiated? I'm not sure what finding or findings you're referring to. Both. That RHJ's status as a methadone clinic led the city to impose these requirements based on their belief about RHJ's patients. You had a question? Yes, I did. Didn't this court's decision in New Directions Treatment handle this, decide this? It did not, Your Honor, because New Directions did not deal with the regarded as prong. In New Directions, the court said, people in a rehabilitation clinic that suffer from a drug addiction are presumptively qualified under the ADA and RA, and the parties did not dispute that in the case. So you didn't have an actual holding is what you're telling me. Not a holding directly applicable to this case. It helps you. I know a little bit about New Directions. I wrote it. I guess you should.  I even remember something. That's the important thing, he remembers it. It helps you a little bit so far in its basic principles that go to the standing issue here, but it doesn't get you any farther than that. That's correct, Your Honor. Well, language actually is that this court has conclusively settled that the proprietors of a proposed methadone treatment facility have standing to seek relief both on their own behalf and on behalf of their clients under both the ADA and the Rehabilitation Act. I think those are your words, aren't they? Yeah, that's the language. Well, he adopted them. Well, what about that? It does say that right in the opinion. Excuse me. Go ahead. I'm looking at it now. Is that what Judge Slobeder said to you as an exact quote under the first paragraph of the discussion? I think the idea behind that quote, I don't want to put words in Judge Smith's mouth. That's all right. The idea behind that quote is that when you suffer from a drug addiction and when you are in a rehabilitation clinic, under those circumstances a drug addiction is essentially a disability per se. You're always going to be substantially limited in a major life activity. And the evidence in this case. Are you going to be regarded by the community as disabled or unfavorably? If the community makes comments towards that end, yes, exactly. You're being very careful. Sure is. So really the nub of this case is what does the community, to the extent those views may be imputed to the defendant municipality here, demonstrate with respect to the nature of the impairment and whether or not it constitutes one of the impairments under the statute and whether it substantially impairs the ability. Exactly, Your Honor. And you believe the record demonstrates that and the district court believed the record did not demonstrate that. I believe the district court ignored the relevant evidence under this inquiry. Since we're talking about that, and really I should have asked this a while back, what is the standard of review here with respect to the regarded as inquiry? I think you can look at it from three different perspectives. First, as a matter of interpretation. The district court concluded that the type of prejudice that RHJ suffered was not the type of prejudice that was designed to be covered by the regarded as prong. Second, you can look at it from an application standpoint. If we look at it that way, that's a de novo. You can look at it from an application standpoint. Obviously the determinations by the court that the mayor said we don't like those things on a radio show is a simple finding of fact. That one's easy, right? As are the determinations that such and such said X, Y, and Z at a public hearing. But what happens when we get to taking those statements on their face and trying to match them up with the statutory definition of impairment that substantially affects?  No, that's a quintessential example of application. Would you say it's at least a mixed question then which would require de novo review? Or do you think it's a clear legal determination? I think when the facts are undisputed, it's a clear legal determination. It's the application of undisputed. What difference does it make if the facts aren't disputed? If the court makes a finding of fact with respect to the mayor said X, it's a fact. If he makes a determination that the mayor said Y, but the other side said he said X, it's still a clear factual determination. Correct. So I'm not sure what you mean by whether or not it's contested. It comes down to the use that we as a court decide to make of those particular set of facts, right? Correct. I think under either scenario, it's a de novo review. Time's almost up. Maybe we can move to the mitigation issue, which frankly had me scratching my head, which is going to give my friend an opening to say something negative about me. We have the same open spot to scratch. But you're alleging a violation of a constitutional deprivation, and the judge required you to do, to mitigate your damages, to do exactly that which the ordinance that was struck down that you're challenging asked you to do. Exactly. And our position is this principle was expressed by the court in Easer Express. The plaintiff is not required to give in to the unlawful demands of the defendant in order to mitigate their damages. In this case, the district court found that it was, that RHJ could only mitigate its damages by locating in the very area that it was unconstitutionally zoned. Thus, RHJ was faced. What's the import of that? I'm not sure I understand your argument, because it doesn't sound like garden variety mitigation principles to me. It's not garden variety. I think this is a very unique situation. So you're claiming that because it's a constitutional violation, ordinary mitigation principles don't apply? No. You're not claiming that? What's the authority for that? I'm claiming that ordinary mitigation principles for a discriminatory plaintiff apply, and Easer Express said you do not have to give in to the unlawful demands of the defendant in order to mitigate your damages. All right. So you are saying that there are special rules of mitigation or different rules of mitigation that apply where there's a constitutional violation that applies, as opposed to some ordinary tort-type violation? I'm not, Your Honor. Easer Express applies in the commercial setting. They're going right by your head. You're not saying that? I don't think we need to say that. Easer Express was in the commercial setting. That's the point. Okay, yeah. I'm curious because I admittedly am not sure what the basic principles of mitigation are here that this court should apply. I read the district court to be saying that if there is one, for lack of a better term, opportunity that your client failed to avail themselves of, that's sufficient for purposes of concluding that they failed to mitigate. And I don't know whether that's the rule or not, honestly. Or alternatively, whether it's a simple rule of reasonableness that applies in terms of the steps that your client was required to take for mitigation. In short, I'm asking, what is the rule and what are the rules? So that's our first argument, which you just expressed. The district court interpreted Pruski too literally, that if you show one further reasonable action that the plaintiff could have taken, you establish your mitigation verdict. I was on the Pruski panel. I mean, isn't it reasonable, as unclear as Pruski may arguably be on that point, wasn't it reasonable to take Pruski that way? I do not think it was. That one you hit.  All right. Yeah, and Pruski, Easer, they're all breach of contract cases. Easer's breach of contract in a collective bargaining agreement. Pruski's a very complicated investment contract. But there are the kinds of arrangements where money is at the heart of it. And if you're injured, the thing which you're at a loss for is dollars. And therefore, it makes some sense to look at a contract scenario or a contract for mediation to mitigate, to reduce the financial exposure to the other side. But in a constitutional violation, it's just, I've never seen that before. You reserve some time. You're saying yes, but what are you agreeing to, the judgment you just said? I'm saying that the burden is even heavier in discrimination cases like this, and you surely cannot carry it by showing one further reasonable action that the victim of discrimination could have taken. Well, that confuses me. What I was suggesting was that the whole concept of mitigation doesn't work here. You're saying it works, but the district court misapplied the doctrine that properly applied to the underlying finding, rather than saying that doctrine doesn't even apply here. You're saying it was misapplied rather than it shouldn't have even been applied. That's correct, Your Honor. Why did the hospital property or space that was available to you not constitute a reasonable and appropriate facility for your client? Well, two reasons. First, just because it may have been reasonable does not negate all the reasonable conduct that RHA engaged in to mitigate its damages. Well, I understand that, but this specific facility, if it was amenable to your client's use, may constitute, could constitute that one mitigation effort that your client failed to pursue if that were the rule, and that's why I'm asking. Factually, what's shown here, and why wasn't it adequate? Because it was near residences, and RHA as a methadone clinic does not want to locate near residences because of its early hours of operation, and the district court expressly found in its findings that that was one of RHA's specifications. What about the square footage and the fact that that was for sale ultimately, and your client said that it won in the need of 4,000 to 5,000 square feet, and it did not want to enter into any leasing arrangement with the property that was ultimately for sale? Both of those are additional specifications that the district court expressly found that that specific property did not meet. Anything else, Mr. Munson? We'll have you back in rebuttal. Okay. May it please the Court, my name is John Morgan Stern of D.C. Mahoney Valentino North. I represent the city of Dubois. Mr. Morgan Stern, could we start with the standard of question that we inquired of your colleague about? What's the applicable standard of review here relative to the regarded as inquiry? With regard to the regarded as inquiry, Your Honor, I think, especially in a case like this with a complete absence of evidence, I think we have a clear error of law is what we would have to look for. And in this case, there was no clear error of law. There was, in fact, no evidence presented to the court. I think you're mixing here. Is it a clear error, which is factual in nature, or is it an error of law which would provide us with plenary review? Well, Your Honor, it will be factual in nature due to the absence of the facts. Well, it's helpful. I didn't get it either. Yeah, maybe we should move on. I don't understand what you just said. No, I didn't either. I didn't either. Okay. You're over three there, Mr. Morgan Stern. I apologize. The facts are, in this case, that we have here a methadone clinic who operated, who opened its doors in violation of Section 621 when Section 621 was the law. Without ever speaking to anyone at the City of Du Bois, it opened and began doing business as a methadone clinic without the proper permits. The law required that they not open a methadone clinic within 500 yards or, I'm sorry, 500 feet of a public park. This was within approximately 39 feet. Well, they took the position that the walkway was a public park. I'm not sure that if we had a factual hearing on that, that would stand. Although they stipulated to it, Your Honor. They did sign a stipulation in the state court during the injunction proceedings. At the trial level, RHJ did not identify a single individual who would have presented any testimony to even reach the starting line on the inquiry as to whether RHJ can establish standing under the RDA, I'm sorry, the RA or ADA. Well, why would they need a specific individual? If it's regarded as basically an associational standing where you're bringing a claim because, and that's right in the statute, you represent people who are regarded as disabled, why would they need to bring forth a specific person who is, in fact, either addicted to drugs or under methadone treatment? I guess that's the same thing. Right, Your Honor. And looking at the Hunt case, the Supreme Court case from 1977 at 432 U.S. 333, this was the case cited by the Addiction Specialist Court. In order for an association to have standing to bring suit on behalf of its members, it must meet three criteria. One is that its members would otherwise have standing to sue in their own right. You're talking about generalized Article III case in controversy standing as opposed to a statute which includes within it the ability to seek relief if you are disadvantaged because of your association with a protected group under that statute. That's different than Article III standing. It is, Your Honor, but relevant nevertheless because in this case, under the ADA and RA, we do have the carve-out for drug use. So, in other words, individuals are not entitled to the protections of the ADA and RA in their own right if it is shown that they are using drugs. But they are if it's shown that they're not using drugs but in drug treatment, which is what we have here. I'm assuming that, and I don't know if maybe we're going to be on the record here, but if someone's in a methadone treatment program, assuming that methadone and drug addiction, assuming that that gets you to the impairment under the ADA and the RA, then isn't that exactly the kind of situation that the carve-out is not intended to reach but that is still protected under the statutes? You're in drug treatment. That which gives you the impairment which is subject to the statute is no longer preventing you from having a major life function because you're undergoing treatment for it. And that's exactly the kind of protection, it seems to me, that the RA and the ADA are intended to extend. I agree with the proposition that those are the protections that the RA and the ADA are intended to protect against. However, it's black-letter law that individuals who are continuing to use drugs  Dr. Morgenstern, isn't your best argument here, isn't your strongest argument that even assuming impairment, the regarded-as equation requires that the impairment that is viewed by the denizens of the community and therefore imputed to the community itself is one that substantially limits a major life activity? Isn't that your strongest argument? That what can be said here is these folks may have seen an impairment, they may have regarded an impairment as existing, but what they did not do was regard an impairment that falls under the statute. Yes, Your Honor. That impairment being one that would be so significant as to... So substantial. Right, so substantial that it would limit a major life activity. So what did the plaintiff here show? What does the record demonstrate in the way of evidence that the district court may have missed or misread that would show that not only were these patients at the clinic regarded as having an impairment, but they were regarded as having the kind of impairment that would substantially limit a major life activity? Your Honor, Judge Gibson did a very thorough job of... I've read the opinion. It's what, about 55, 58 pages or something? It's lengthy for sure, and he did go into a full inquiry, and remember this was an opinion that followed lengthy opinions on the 12B6 motion and again on summary judgment, and he laid out essentially a road map in each of those opinions as to what the plaintiff would have needed to have shown in order to open the door, to show that RHJ was associated with any individuals who were substantially limited in a major life activity. What do we do with the language that Judge Sloboda referred to in New Directions? Actually, Your Honor, if I may? Your Honor, as Judge Smith pointed out, again, these being his words, that when, let's see, the ability of municipalities to waive the statutory ban in no way alters the fact that Section 621 facially singles out methadone clinics and thereby methadone patients. This is other language from the New Directions case that I think falls within the same category as the other language referenced by Judge Sloboda, written by Judge Smith. It perhaps opens the door. It gives an indication that facilities such as RHJ can bring suit on behalf of its individual clientele, but it still needs to meet its burden. It still has to show that association with individuals who are regarded as having substantial limitations in major life activities. Who else are they associated with? In the language in New Directions, we have conclusively settled that the proprietors of a proposed methadone treatment facility have standing to seek relief both on their own behalf, which kind of negates what you just said, and on behalf of their clients under both the ADA and the Rehabilitation Act. If we just focus on the latter part, their clients, who else could we be talking about? In New Directions, we're talking about the same corpus as we are here. Not the same people, obviously, but the same legal universe. Methadone clients, people getting methadone treatment. Exactly, Your Honor. And the driving force there is that in New Directions, we're talking specifically about identified individuals. There were individuals who sued as well in that case who were plaintiffs shoulder to shoulder with New Directions. Right, but the language I just read to you doesn't talk about the individual plaintiffs. It talks about the proprietors of the clinic have two prongs on which they can base standing, representational or associational, on behalf of those folks that you're talking about, as well as their own injuries that result from that association with those people. Right, but, Your Honor, the key difference, though, is that they have to identify some individuals. Whether an individual would qualify under the ADA and RA is a relevant inquiry. It was never developed on the record of trial. It was R.H. James Bay. They would have to show specific people? They would have to show an association with individuals who would have, we can't say as a matter of law that everyone, every opioid addict, anyone who's ever been an opioid addict is, as a matter of law, disabled and regarded as being substantially limited in a major life event. Well, because this appeal has gone forward solely as a regarded as argument, hasn't it? Correct, yes, sir. And they don't have to show everyone. They just have to show one. They would have to show one. That's it. And they didn't. And you're saying they didn't? They did not. Not a single individual. Is there any dispute about who their clients are? Not the identity of, whether it's John Smith, Jane Doe, not that, but what impairment, and I don't mean to set you up in a straw argument there by suggesting impairment automatically gets you ADA eligibility, but just take the word impairment without the legal significance of ADA and RA coverage. Is there any debate about the nature of the impairment that at least one of their clients is laboring under? It was never developed on the record, Your Honor. Whoa. Are you saying this is not even a methadone? You're basically arguing this is not a methadone clinic. It's a methadone clinic. What does a methadone clinic do? They treat people with opioid addictions. Well, what people do they treat? People with opioid addictions, and specifically what they laid on the record is that they would treat individuals with severe opioid addictions, having suffered from such for more than a year. Mr. Morgenstern, isn't the answer to the question, again, isn't your best argument not to say there isn't one or at least one, as Chief Judge McKee has suggested, but that whatever that condition is and however substantially impaired the person may be, that somebody out there in the community or the community itself did not regard the person that way? That's correct, Your Honor. I'm not trying to argue your case for you, but I am trying to focus the argument, which I was quite honestly not sure what question you were answering. Okay. Your Honor, in order to reach the starting line, I'm saying, they would have had to have raised some testimony by individuals, by experts, some testimony to meet the burden to establish eligibility under the ADA and RA. And to do that, they would have had to do what? Show specific people? One way would have been to show specific people. Another would have been to present expert testimony on the issue, Your Honor. We cannot say as a matter of law that anyone who has ever been an opioid addict is substantially limited in a major life activity. Yeah, but the question is not whether it's anyone, but is someone within that category? That is a relevant inquiry because they would only have to show one. However, this is a regarded as case. And so really what we're looking for on the record is a shred of evidence that shows that the City of Dubois regarded any individual patient or client of RHJ as having been disabled. I heard Mr. Montsour say that there was a fear, a generalized fear, that someone associated with RHJ might behave in a certain way at some point in the future. That's not the same as regarding someone as being substantially limited in a major life activity. There's no question there was considerable animus out there in the community, as demonstrated on the record in this case, toward a methadone treatment clinic. You'd agree with that, wouldn't you? Animus toward a methadone treatment clinic, qua methadone treatment clinic. The methadone treatment clinic that opened without ever speaking to them within 39 feet of a public park in violation of the law. The reason that the mayor thought these folks were garbage was because they didn't speak to them. They didn't follow process. Is that what you're arguing? They didn't follow process. They didn't knock on the door and say, Mr. City Council President, may I have a chat with you? Can I get your time over for a cup of coffee or a glass of wine? That's not your argument. We all know why they didn't want the clinic in. Not because they didn't come and call them nicely, but because these folks represented, quote, garbage, close quote. That's why they didn't want the clinic in there. Your Honor, I do need to take issue with that representation. The mayor didn't take issue with it. He adopted the statement. The issue, if Your Honor reviews appendix pages 1668 to 1678, that comment was taken completely out of context. How do you take that out of context? The mayor is sitting there and the radio host says, you've got to put your garbage somewhere, and the mayor says, agreed. Help me get the context that would take this thing out of that one. The context, Your Honor, if you read that transcript of that record and if you understand the background, is that the big issue discussed earlier in that radio interview and in prior radio interviews was whether the city of Du Bois had to accept shipments of trash, garbage, from the Philadelphia area to the landfills in and around Du Bois. And it was the last NIMBY case. Did you ever make that point in the brief? Because I certainly came here with the understanding that garbage was being used as a pejorative to refer to clients at the treatment center. And I looked at the transcript. And that was the issue. That was as presented by opposing counsel. But, Your Honor, if you look at the transcript, that is not. No, but my question is, is it clarified anywhere in your brief? Because the plaintiff did rely upon it, and I did not see that implication that plaintiff tried to make corrected anywhere here. I have to. In all candor, Your Honor, I believe it's not addressed sufficiently. The transcript I had was in local radio. And believe me, if you learn one thing, it's not to pay much attention to what a disc jockey or a local radio interviewer says. That was the language they used. Let me give you the transcript if you want me to put this in context. This will take a little bit of time, so I don't want to get into the whole thing. You know what, there's a drug problem in Du Bois. I'm not going to sit here and deny it. There definitely is. It goes on down. There's a drug problem in the community in the Bois area. Our police officers do a fine job. You know, we don't know enough about it. You know, we hear it and we read things about these methadone clinics and other areas, and we don't like them. You know what I mean? So, you know, that's the mayor speaking. The host then says they definitely, just the mention of it, makes my hair stand on the back of my neck. He's not talking about recycling glass containers here. He then goes on to say the problem here is that I think that there's a lot of, I don't know much about the situation. I'm not really clear. I understand what it is. It's a place where people can go that they're trying to get off very hard drugs. I understand that we live in a society where, unfortunately, there is a need for such things. You know, and this kind of goes with the same argument that we've got to, we've been having with the landfill people. You know, I understand you've got to throw your garbage somewhere. And the mayor says, right, that's the way the landfill was used. He's basically saying, you know, a methadone clinic is kind of like a landfill. You've got to put your garbage somewhere. But if you can help straighten out that context, and I can go on with this. The host says, the issue here is do we as people have to accept Philadelphia as garbage? And I don't know of any program where we're shipping recycled Philadelphia inquiries, but who knows? It all ends up in Altoona. Everything's up in Altoona where they speak such fluent French. Then the host says, do we as a people need a methadone clinic to provide the services that they provide when we're all number one? And I'm not even sure what exactly. It goes on and on. But that's the entire page now, which I pulled out of the PDF file. If you want to, I can go into the entire appendix, but I don't think I'm going to find anything in there which is going to negate the association of landfills for garbage and methadone clinics for people. Yeah, I'd say that dog won't hunt, Mr. Morris. I would also say, let's not lose sight of one thing. The plaintiff did win here. They did win something, which says to me a heck of a lot. They just didn't win the whole shooting match, and they didn't obtain all the damages they won. They won on the equal protection claims, Your Honor, and we did not appeal those. Right. Maybe you can help me with this mitigation concept. Do you want to go ahead? No, go ahead. Do you know of any case where there is a burden of mitigation where the injury is a constitutional deprivation as opposed to money damage arising from a contractual situation? In 1983, you might find that I could theorize a situation in 1983 where the constitutional violation is excessive force. The person is out of a job because of the excessive force, and they don't do anything to find the new job. Maybe then you could say, well, look, you can't just sit around and run up the bill. You've got to try to find employment. Maybe then you get mitigation to mitigate the lost wages. But in this context, do you know of any case? I do not know of a case, Your Honor, in the constitutional realm. Mitigation, as I've understood it, has always been an affirmative defense. But what were the measure of damages being sought here by the plaintiff? The measure of damages included lost profits and any number of... So it really is in the nature of a business loss claim. It is, Your Honor. The expenses that the methadone clinic had to undergo in order to make up for this, assuming they could make up for it. Expenses being another category of damages. That's basically what they were awarded. They already have a judgment in the amount of the expenses. What we have in this case, so keeping in mind that the city of Dubois is very small. It's only 3 1⁄2 square miles or so. How many people do you know in the population? I'm sorry, Your Honor? Do you know the population of Dubois? I do not know off the top of my head, Your Honor. Less than 10, I think. It's quite small. Less than 10 people? No, it's 10,000, I think. And the city had been in the process of developing a zoning plan where they were developing a medical campus with a Dubois Regional Medical Center where they're moving medical facilities down to the hospital campus area where there was in excess of 90,000 square feet of space open for lease. And so this is the evidence presented to Judge Gibson when he found that there was a failure to mitigate. They never considered, they never went to the obvious, the areas that were zoned for medical facilities. Didn't the Ordinance 1720 exclude methadone facilities from medical facilities? From the 01 zone that was being considered at that point. But again, we're going to Section 1720 that they won on that one. Yeah, the original. Right, 621. Well, 621 is a Pennsylvania law. We've got Ordinance 1720. And so they went, they could have applied for a variant at that time if they wanted to open it in or around. But here's the question. They excluded methadone clinics from the medical area and the reason given was, well, they dispense drugs at the methadone clinic. I'm amazed, but I would assume that medical facilities have pharmacies where you can get drugs. And when I read that, I thought that if you're going to come up with a dodge, you can come up with a better dodge than that. So the methadone clinics dispense drugs, but the medical clinics, they don't dispense drugs. That can't be. It was an unfortunate drafting of that Ordinance, Your Honor. But again, the RHJ won on that count. As far as the mitigation goes, they made no effort to locate among the other medical providers. When the hospital's president testified that he would have welcomed RHJ to the medical campus and the witness for RHJ did testify that she thought that the area down among the medical campus would have been ideal and perfect for RHJ. Was there a facility that was between 4,000 to 5,000 square feet that was not available for sale, only for lease within that campus? There were spaces, again, totaling something in excess of 90,000 on both the east and west campuses. There was undoubtedly space. The hospital's president did testify that there would have been space. They would have been welcome. Okay, Mr. Morgan, thank you. Okay, thank you. Just to address that last comment about the 98,000 square feet, the former DRMC president testified that the entire hospital was 98,000 square feet. It was general testimony, not a specific property. As far as Judge Smith's concern about the regarded-as prong and whether they believe that we were substantially limited in a major life activity, I think the evidence supports that conclusion. But you can see that is your burden, having chosen to go the regarded-as route here. That then becomes your burden factually, does it not? To prove that the perceptions of the city substantially limited. To change the statute. Exactly, yes. I can see that. You said the evidence. In a nutshell, I don't have much time, what is the evidence, other than general aspersions about folks who are drug-addicted? The findings of fact and conclusions of law denying our certificate of use, specifically state we're denying your certificate of use because you don't have an ambulance to transport patients when they overdose, you don't have your own police force, you don't have your own fire department, you don't have your own physician on staff to handle overdoses or a physician on staff to handle at the local hospital overdoses, specifically saying overdoses. The mayor defended the law by saying... You're focusing on overdoses. Take me from overdoses to the ADA and the RA language. Sure. What regional economics said and what this court affirmed in US v. Autobahn is that your major life activity of caring for yourself is substantially limited if you cannot live independently without overdosing. The perceptions of the city match that statement. They believe that we cannot live independently without a physician, without our own ambulance. Doesn't that require a series of inferences? I don't think it does, Your Honor, because... Inferences that the district court obviously chose not to make. Two points to that. If it does require an inference, the district court wasn't focused on the correct evidence because he disregarded all of this. I don't think it does require an inference because they are saying directly, you are going to suffer overdoses. That directly equates with the major life activity of caring for oneself. You don't need any inference there. And I think that's where the Fourth Circuit's case in a helping hand is instructive. I see that my time has run out. Okay. A helping hand stands for the proposition that when the discriminatory comments do not directly equate with the major life activity, you cannot determine the regarded as prong as a matter of law. There's got to be a permissible inference there. The jury could infer that because the county viewed the methadone clinics in that case as criminals and undesirable neighbors, they also thought they were unable to work. But you can't decide that as a matter of law. And here, the comments of the city are directly equated with RHJ's patient's ability to care for themselves. And in that situation, there's no inference necessary. Do you know of any case that holds that driving is a major life activity? I didn't take the time to look that up, but I know it's been addressed. I couldn't remember the answer to the question. Holt is a Tenth Circuit case that says driving is incorporated into caring for oneself. Okay. Thank you very much. Thank you.